### Donna L. RUBIN

v.

### MATTHEWS INTERNATIONAL CORP.

Supreme Judicial Court of Maine.
Argued Sept. 18, 1985.
Decided Jan. 9, 1986.

---

Berman, Simmons & Goldberg, P.A., Jack H. Simmons (orally), Steven D. Silin, Paul D. Macri, Lewiston, for plaintiff.

Kelly, Remmel & Zimmerman, Leland N. Chisholm (orally), U. Charles Remmel, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The plaintiff, Donna L. Rubin, appeals from an order of the Superior Court (Cumberland County) dismissing her complaint and entering judgment on behalf of the defendant, Matthews International Corporation (Matthews), pursuant to Rule 12(b)(6) of the Maine Rules of Civil Procedure.[1] The plaintiff sought to recover damages for the emotional or mental distress she claims to have suffered as the result of the defendant's failure to make timely delivery of a memorial stone. Her complaint asserts four claims: breach of contract, negligence, negligent infliction of mental distress and intentional infliction of mental distress. On the defendant's motion, the Superior Court dismissed Rubin's complaint for failure to state a claim upon which relief could be granted. We vacate only the court's dismissal of that portion of the complaint that alleges the intentional infliction of mental distress.

In determining whether the lower court erred in granting the defendant's motion to

---

1. Despite the tangled procedural posture of this case, we agree with the parties that the Superior Court's granting of summary judgment as to Count I of the complaint, coupled with the dismissal of Counts II–IV, should be treated as a dismissal pursuant to Rule 12(b)(6).

dismiss, we consider all well-pleaded material allegations of the complaint as admitted. *See Culbert v. Sampson's Supermarkets, Inc.*, 444 A.2d 433 (Me.1982); *Harmon v. Harmon*, 404 A.2d 1020 (Me. 1979). Those allegations reveal that on February 2, 1984, Donna L. Rubin placed an order with the Memorial Division of Matthews for the design and provision of a memorial stone for her mother's grave. Matthews was notified that the stone was to be provided for an unveiling ceremony scheduled to occur on May 5, 1984. Representatives of Matthews were aware of the religious significance of the event and agreed to have the memorial stone delivered prior to the time for the unveiling. They repeatedly represented in the weeks prior to May 5, 1984, that the memorial stone had been shipped and would be delivered on time to Rubin through Brooklawn Memorial Park in Portland. Matthews was further aware that the delivery of the memorial stone would take at least one week. The stone was in fact not shipped until April 30, 1984, just five days before the scheduled date of the ceremony, and did not arrive on time.

### BREACH OF CONTRACT

█ The first issue presented by this appeal is whether a cause of action exists for the recovery of damages for mental or emotional distress suffered solely as the result of a breach of contract. In a breach of contract action, those damages that were "reasonably within the contemplation of the contracting parties when the agreement was made and which would naturally flow from a breach thereof" may be recovered. *Winship v. Brewer School Comm.*, 390 A.2d 1089, 1095 (Me.1978); *Susi v. Simonds*, 147 Me. 189, 85 A.2d 178 (1951). As a general rule, courts in other jurisdictions have denied recovery for mental or emotional distress suffered as a result of breach of contract unaccompanied by physi-

cal injury. *See McClain v. Faraone*, 369 A.2d 1090, 1094 (Del.Super.Ct.1977); *Stanback v. Stanback*, 297 N.C. 181, 187, 254 S.E.2d 611, 617 (1979); *Restatement (Second) of Contracts* § 353 comment a, at 149 (1981); *see generally*, 5 *Corbin on Contracts* § 1076 (1964). On the facts of this case, we decline to adopt a broad exception, as urged by the plaintiff, to the general rule precluding damages for mental and emotional distress in a contract case. We also do not find that the untimely delivery of a memorial stone falls within the existing narrow exceptions to the general rule.

The judicial reluctance to award damages for emotional distress in contract actions is reflected in *Restatement (Second) of Contracts* § 353:

> Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.

Common examples of the second exceptional situation are contracts 1) between carriers and innkeepers and their passengers and guests; 2) for the carriage or proper disposition of dead bodies; and 3) for the delivery of messages concerning death. *Id.; see, e.g., Southeastern Greyhound Corp. v. Graham*, 69 Ga.App. 621, 26 S.E.2d 371 (1943); *Lamm v. Shingleton*, 231 N.C. 10, 55 S.E.2d 810 (1949) (breach of contract to conduct funeral and provide suitable casket and vault); *SoRelle v. Western Union Tel. Co.*, 55 Tex. 308 (1881) (failure to deliver message to plaintiff announcing mother's death).[2]

Rubin contends that the untimely delivery of a memorial stone falls within the second or third exception concerning death. Assuming without deciding that we recognize these narrow exceptions, the present case does not fall within their parameters. It would strain the exception for disposition

---

**2.** Another such exception was early recognized in Maine for breach of promise to marry. *See Gerber v. Schwartz*, 124 Me. 441, 127 A. 903 (1925). We have since held emotional distress damages in such cases to be barred by the statute that prohibits actions for breach of promise to marry. *Waddell v. Briggs*, 381 A.2d 1132 (Me.1978).

of bodies and delivery of death messages to include untimely delivery of a memorial stone. Most of the actions in this area of the law, whether sounding in contract or in tort,[3] involve mishandling of the corpse, incidents occurring prior to or at burial, or wrongful disinterments. *See Whitehair v. Highland Memory Gardens, Inc.*, 327 S.E.2d 438 (W.Va.1985); *see, e.g., Sackett v. St. Mary's Church Soc.*, 18 Mass.App.Ct. 186, 464 N.E.2d 956 (1984); *Lamm v. Shingleton*, 231 N.C. 10, 55 S.E.2d 810; *cf. Plummer v. Hollis*, 213 Ind. 43, 11 N.E.2d 140 (1937) (no recovery for mental distress from breach of contract to have photo made of deceased daughter before burial). Because the unveiling ceremony was removed in time from the plaintiff's mother's death, and did not involve the disposition or mishandling of the body, this case is not encompassed by one of the limited categories where damages for mental or emotional distress have traditionally been awarded.

Rubin alternatively proposes that we not limit ourselves to the narrow exceptions discussed above but that we adopt a broad exception to the general rule precluding such damages in contract actions. She suggests an exception similar to that enunciated in 38 Am.Jur.2d *Fright, Shock and Mental Disturbance* § 35 (1968)[4]:

> Damages for mental distress resulting from a breach of contract may be recovered where the contractual duty or obligation is so coupled with matters of mental concern or solicitude or with the feelings of the party to whom the duty is owed that a breach of that duty will necessarily or reasonably result in mental anguish or suffering.

We find the authority cited in favor of such a broadly formulated exception unpersuasive.

For example, the North Carolina Supreme Court, in *Lamm v. Shingleton*, 231 N.C. at 14, 55 S.E.2d at 812, developed such a rule in an attempt to encompass the various exceptions to the general rule. Despite the broad formulation of the rule therein, the facts of the case—water and mud had entered a casket because the vault had not been locked—limit the rule announced and distinguish it from case before us. The court focused primarily on the mental anguish that one recently bereaved would suffer from the improper handling of a family member's body. *Id.* at 15, 55 S.E.2d at 813–14. *Lamm* therefore falls within the established exception for the disposition of bodies and does not persuade us that the exception should be broadened.

In *Stewart v. Rudner*, 349 Mich. 459, 84 N.W.2d 816 (1957), the Michigan Supreme Court created an exception similar to that adopted in *Lamm*. *Stewart* involved the alleged breach of an agreement to perform a Cesarean section delivery, which resulted in the stillbirth of the plaintiff's child. Finding that the plaintiff's complaint stated a cause of action for mental distress damages, the court observed:

> When we have a contract concerned not with trade and commerce, but with life and death, not with profit but with elements of personality, not with pecuniary aggrandizement but with matters of mental concern and solicitude, then a breach of duty with respect to such contracts will inevitably and necessarily re-

---

**3.** The distinction between contract and tort theory in some of the "special circumstances" cases is often blurred. *See* Comment, *Duty, Foreseeability, and the Negligent Infliction of Mental Distress*, 33 Me.L.Rev. 303, 311 n. 42 (1981); 5 *Corbin on Contracts*, § 1076 (1964).

**4.** The *Restatement (Second) of Contracts* § 353 exception, also relied on by the plaintiff, is a much narrower formulation, to which the exceptions have been limited. *See supra* at 3. The exception as stated in 5 *Corbin on Contracts*

§ 1076 (1964) requiring that the breach be wanton or reckless before damages for mental suffered may be awarded, provides weak support for the plaintiff's argument. The exception as enunciated in 11 W. Jaeger, *Williston on Contracts* § 1341 (3d ed.1968) requires simply that "other than pecuniary benefits" be the object of the contract, and, as such, is of little guidance in developing a rule to encompass various exceptions.

sult in mental anguish, pain and suffering.

*Id.* at 465–71, 84 N.W.2d at 821–24. Even if we were to adopt such a broad test, we cannot say that the untimely delivery of a memorial stone would "inevitably and necessarily" result in mental anguish. Furthermore, it is clear that the breaching party, Matthews, was in fact concerned with trade and commerce and was acting for the purpose of pecuniary gain.

Rubin also cites the exception developed in Alabama for breach of contract in connection with the construction of a home. *See B. & M. Homes v. Hogan,* 376 So.2d 667 (Ala.1979). In *Hogan,* the court, relying on the *American Jurisprudence* statement of the exception, held that a builder was liable in damages for mental distress experienced by the homeowners. However, the facts, which reveal that a crack in the concrete slab widened and extended throughout the house, causing severe actual damage, again limit the broad formulation of the rule in the construction cases. Furthermore, this exception seems to have been applied by a limited number of states. *See B. & M. Homes Annotation,* 7 A.L.R.4th 1178 (1981) (only Alabama and Louisiana courts cited as awarding mental distress damages, absent accompanying physical injury, resulting from breach of home construction contract).

California early allowed recovery for mental distress damages in contract actions. *See, e.g., Westervelt v. McCullough,* 68 Cal.App. 198, 228 P. 734 (1924) (plaintiff allowed mental distress damages suffered as a result of defendant's breach of promise to provide plaintiff a home for duration of plaintiff's life). Although *Westervelt* involved physical suffering resulting from mental distress, the California court, relying on contract cases from other jurisdictions in which recovery for mental distress alone was allowed, held:

> Whenever the terms of a contract relate to matters which concern directly the comfort, happiness, or personal welfare of one of the parties, or the subject-matter of which is such as directly to affect or move the affection, self-esteem, or tender feelings of that party, he may recover damages for physical suffering or illness proximately caused by its breach.

*Id.* at 208–09, 228 P. at 738, *quoted in Stanback v. Stanback,* 297 N.C. at 194, 254 S.E.2d at 620. Subsequent California cases have applied this principle to allow recovery of mental distress damages alone in a contract action. *See, e.g., Windeler v. Sheers Jewelers,* 8 Cal.App.3d 844, 88 Cal. Rptr. 39 (1970). However, we agree with the North Carolina Court that the California standard is overly broad and "imposes too great a burden on parties to a contract." *See Stanback v. Stanback,* 297 N.C. at 194, 254 S.E.2d at 620.

Accordingly, we are not persuaded, on the facts of this case, that the general rule precluding damages for emotional or mental distress for breach of contract should be abandoned.

## NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRICT

Rubin argues that the tort of negligent infliction of emotional distress may rest on the underlying tort of negligence where the sole harm suffered is emotional distress. We disagree.

We stated in *Packard v. Central Maine Power Co.,* 477 A.2d 264, 268 (Me. 1984) that

> no recovery can be had on a claim for infliction of emotional distress unless the defendant is found liable on the underlying tort.

Contrary to Rubin's contention, mental distress is insufficient in and of itself to establish the harm necessary to make negligence actionable, without either accompanying physical consequences, or an independent underlying tort. *See Prosser and Keeton on Torts,* § 54, at 361–62 (5th ed.1984); 2 F. Harper & F. James, *The Law of Torts* § 18.4, at 1031–32 (1956) (mental or emo-

tional distress standing alone will not constitute the kind of legal damage needed to support an action for negligence); *see also Packard v. Central Maine Power Co.*, 477 A.2d at 268; *Culbert v. Sampson's Supermarkets Inc.*, 444 A.2d 433 (Me.1982); *Wallace v. Coca-Cola Bottling Plants, Inc.*, 269 A.2d 117 (1970); *see generally Wing v. Morse*, 300 A.2d 491 (Me.1973) (harm required as element of negligence).[5] Accordingly, the Superior Court justice did not err in dismissing the plaintiff's negligence claim absent the kind of harm necessary to establish that essential element of the cause of action. Furthermore, without an independent underlying tort, Rubin's claim for negligent infliction of emotional distress must also fail. *See Packard v. Central Maine Power Co.*, 477 A.2d at 268.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Rubin asserts finally that because reasonable men could differ as to the outrageousness of the defendant's conduct, it was for the jury to determine whether the conduct was sufficiently extreme and outrageous to result in liability. Because we agree, we vacate the order of dismissal as to this count.

We recognized the tort of intentional infliction of emotional distress in *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148 (Me. 1979). We held there that a defendant is subject to liability if he intentionally or recklessly inflicts severe emotional distress upon another by engaging in extreme or outrageous conduct. Accepting as true the allegations here that the defendant's conduct was intentional and the emotional distress suffered by the plaintiff was severe, the issue becomes whether Matthews' misrepresentations and failure to make a timely delivery of the monument rise to the level of "extreme and outrageous" conduct.

As a preliminary matter, we note:

It is for the Court to determine, in the first instance whether the Defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the Court, to determine whether, in a particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

*Restatement (Second) of Torts*, § 46 comment h, at 77 (1965).

As we recognized in *Vicnire*, the concept of outrageousness has expanded from its roots in cases involving funerals and death messages. *See, e.g., Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979) (false report to professional football player that he had fatal blood disease); *Hanke v. Global Van Lines, Inc.*, 533 F.2d 396 (8th Cir.1976).[6]

In *Hanke*, the defendant moving company firmly promised an August 13 delivery

---

**5.** We recognize that courts in other jurisdictions have allowed recovery for mental disturbance alone in two special groups of cases: negligent transmission of death messages and the negligent mishandling of corpses. *See, e.g., Whitehair v. Highland Memory Gardens, Inc.*, 327 S.E.2d at 443; *Chelini v. Nieri*, 32 Cal.2d 480, 196 P.2d 915 (1948). However, as we said with respect to Rubin's claims for such damages for breach of contract, the untimely delivery of a memorial stone does not fall within those special exceptions to the general rule.

**6.** The plaintiff asserts that she should recover damages for emotional distress because the defendant's conduct was allegedly associated with the recent death of a loved one. We have already rejected the assumption underlying this contention. The defendant's conduct in cases where such damages have historically been awarded for intentional infliction of emotional distress has been more closely associated with the burial services or the dead body. *See, e.g., Cates v. Taylor*, 428 So.2d 637 (Ala.1983) (plaintiff's allegation that defendants disrupted funeral by refusing only thirty minutes before service to allow father's burial in cemetery lot stated cause of action for intentional infliction of emotional distress; court noted funeral was occasion "laced with sorrow and grief"); *Whitehair v. Highland Memory Gardens, Inc.*, 327 S.E.2d 438 (W.Va.1985) (cause of action for intentional or negligent infliction of emotional distress existed for mishandling of several bodies during exhumation and reburial during highway construction).

date for the plaintiff's goods. The moving company repeatedly misrepresented the delivery date to the plaintiff, a local newspaper publisher, a United States government agency, and two United States Senators, finally making three partial deliveries in October and November. The court found that a jury could infer that the repeated misrepresentations, absent an explanation, were knowing falsehoods made for the purpose of "stringing her along." *Id.* at 399–400. The court concluded that reasonable persons might differ as to whether the facts supported a conclusion that the defendant was liable for intentional infliction of emotional distress.

 Although Matthew's misrepresentations in this case were not so extensive, given the allegations of repeated misrepresentation of a timely delivery of the monument for the unveiling ceremony and the circumstances in which they were made, we conclude that the complaint states a cause of action for intentional infliction of emotional distress. *See Restatement (Second) of Torts* § 46 comment d, at 73. Our conclusion draws further support from the alleged contractual nature of the relationship between the parties. *See* D. Givelber, *The Right to Minimum Social Recovery and the Limits of Evenhandedness: Intentional Infliction of Emotional Distress by Outrageous Conduct,* 82 Col.L.Rev. 42, 69 (1982) (courts most likely to recognize a claim of outrageousness when the parties are "apparently bound by contracts regulating an economic relationship"). Thus, the allegations of this complaint sufficiently set forth conduct upon which liability for intentional infliction of emotional distress may be predicated.

Accordingly, we vacate the Superior Court's order dismissing the claim for intentional infliction of emotional distress.

The entry is:

Order dismissing Count IV vacated; judgment affirmed in all other respects.

Remanded to Superior Court for further proceedings consistent with the opinion herein.

All concurring.