**ORONO KARATE, INC., Roger Fagan, individually**

v.

**FRED VILLARI STUDIO OF SELF DEFENSE, INC.**

**Civ. No. 88–431–D.**

United States District Court, D. New Hampshire.

Oct. 18, 1991.

Stephen T. Jeffco, Portsmouth, N.H., for plaintiffs.

Robert P. Woodward, Concord, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

In this diversity action, plaintiffs Orono Karate, Inc. ("Orono, Inc."), a Maine corporation, and its president and sole stockholder, Maine resident Roger Fagan, seek damages from defendant Fred Villari Studio of Self Defense ("Villari"), a Massachusetts corporation. Under both tort and contract theories, plaintiffs seek recovery for the alleged breach by Villari of a licensing agreement between the parties. Jurisdiction is properly founded on 28 U.S.C. § 1332. Presently before the court is defendant's motion to dismiss for failure to state a claim upon which relief can be granted as to both counts sounding in tort: Count I, negligent infliction of emotional distress, and Count II, intentional infliction of emotional distress. Rule 12(b)(6), Fed. R.Civ.P. Additionally, as to Count III, the contract claim, Villari seeks dismissal of that portion of the claim which seeks recovery for emotional distress as a result of any alleged breach of contract, contending that such damages are not permitted in a contract case. Plaintiffs oppose Villari's motion to dismiss, primarily arguing that defendant relies on the law of the wrong state and, furthermore, that any factual questions are for a jury to decide.

### I. Background

Factually, this case remains confusing, despite an ever-growing file of amended complaints, motions, orders, and memoranda. The backdrop of information arising from allegations on both sides reveals a number of people, some parties to the within action and some not, who have, at various times in the pursuit of business interests, contracted with Villari for rights relative to Villari's martial arts methods. Orono, Inc., apparently entered into a variety of agreements in order to establish martial arts studios in as many as three locations in Maine and New Hampshire.

Specifically, plaintiffs allege to have bought franchise rights for the Westbrook, Maine, area in February 1986 in a deal brokered by Villari.[1] Subsequently, plaintiffs claim to have entered into other contracts in July 1986—one, a licensing agreement with Villari regarding the Westbrook, Maine, territory, and another in which Villari agreed to manage any studio operated by plaintiffs.[2] Plaintiffs' More Definite Statement, ¶¶ 1–4, at 1–2. "Plaintiffs contend that on or about August 31, 1987,

---

1. However, a copy of what is supposed to be the contract relating to Westbrook (proffered by defendant) appears instead to be for the Orono–Old Town, Maine, area.

2. Another contract allegedly brokered by defendant's district manager was for the franchise rights to the North Conway, New Hampshire, area.

Orono was forced to close its studio in Westbrook as a direct and proximate result of Defendant's breach of the licensing agreement." Plaintiffs Memorandum of Law (document no. 35) at 1. As a result, Orono, Inc., seeks damages for lost profits, lost business opportunity, and diminished good will. Fagan seeks recovery for damage to his reputation in the business community, and also for his being "subjected to extensive humiliation, emotional distress and ridicule." Plaintiffs' Complaint, ¶ 22, at 5.

Various of the agreements referred to by the parties have choice-of-law provisions meant to be helpful in settling any disputes. However, notwithstanding these measures, confusion also runs rampant in this regard. Defendant initially seemed to assume New Hampshire law controls. Plaintiffs argued that either Maine law, the state in which the disputed contract was to be performed, or Massachusetts law, the state identified in the choice-of-law provision of the licensing agreement at issue, should control. To assist the court, the parties were ordered to fully brief the choice-of-law issue. In response, plaintiffs reiterated their contention that the licensing agreement underlying this action provides that the laws of the Commonwealth of Massachusetts govern the transaction. Plaintiffs' Memorandum at 3. Defendant argues, however, that since its request for a copy of the alleged contract for management services has not been honored by plaintiffs, it is unable to say that Massachusetts law applies. Rather, argues defendant, under the law of any of the three possible states, plaintiffs have not stated claims upon which relief can be granted. Defendant's Memorandum at 3.

## II. Defendant's Motion to Dismiss

■■■ In considering a Rule 12 motion to dismiss, the issue the court must address is whether, based on the claims con-

tained in the complaint, the plaintiff is entitled to offer evidence. *V.S.H. Realty v. Texaco*, 757 F.2d 411, 414 (1st Cir.1985) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). The court's consideration is limited to the allegations contained within the complaint, *Litton Indus. v. Colon*, 587 F.2d 70, 74 (1st Cir.1978), and those allegations are to be "construed in the light most favorable to plaintiff and taken as admitted, with dismissal to be ordered only if the plaintiff is not entitled to relief under any set of facts he could prove," *Chasan v. Village Dist. of Eastman*, 572 F.Supp. 578, 579 (D.N.H.1983) (and cases therein cited), *aff'd without opinion*, 745 F.2d 43 (1st Cir.1984); *see also Knight v. Mills*, 836 F.2d 659, 664 (1st Cir.1987). This is not to say that an erstwhile plaintiff has unfettered discretion; the court is not required to give weight to "bald assertions, unsupportable conclusions, or opprobrious epithets." *Royal v. Leading Edge Products, Inc.*, 833 F.2d 1 (1st Cir.1987) (citing *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987)).

### A. Choice of Law

Before turning to plaintiffs' tort claims and whether or not they can survive the within motion, the court must resolve the preliminary choice-of-law question. "It is undisputed that this Court must apply New Hampshire's choice-of-law rules."[3] *Smith v. Morbark Indus., Inc.*, 733 F.Supp. 484, 487 (D.N.H.1990) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), and *Roy v. Star Chopper Co.*, 584 F.2d 1124, 1128 (1st Cir.1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979)). However, as to Counts I and II of plaintiffs' complaint, the court does not find it necessary to actually apply New Hampshire's balancing test[4] because, as

**3.** "New Hampshire has adopted modern choice-of-law principles; that is, multi-factor analyses ... [including] the five choice-influencing factors of the 'Leflar' tort test ... [and] the 'significant relationship' contract test[.]" *Mor-*

*bark Indus., supra,* 733 F.Supp. at 487–88 (citations omitted).

**4.** New Hampshire's tort test is described as follows:

defendant suggests, no matter which state prevails, the results are the same. Thus, in accord with the teaching of the First Circuit, "[w]e need not draw the threads of inquiry finer ... [as] our research reveals no material conflict between [the three jurisdictions] in terms of resolving the [ ] claims." *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1092 (1st Cir.1989). "Where a choice-of-law question has been reduced to the point where nothing turns on more precise refinement, that should be the end of the matter." *Id.* (citing *Hart Eng'g Co. v. FMC Corp.*, 593 F.Supp. 1471, 1477 n. 5, 1481 (D.R.I.1984) (when result unaffected, court need not formally make a choice of law)).

Regarding the claims of negligent infliction of emotional distress and intentional infliction of emotional distress before the court, there is no material conflict as to the essential elements of these torts among the jurisdictions of New Hampshire, Maine, and Massachusetts.

*B. Negligent Infliction of Emotional Distress*

██ Plaintiff Fagan in Count I attempts to set forth a cause of action for negligent infliction of emotional distress, and toward that end avers that defendant knew or should have known that defendant's "negligent failure to fulfill the terms of the July 1, 1986, leasing agreement would cause the failure of" plaintiffs' Westbrook studio. Additionally, he alleges that defendant "knew or should have known that failure" of said studio "would affect[ ] Fagan's" business reputation and "cause [him] se-

vere emotional and mental distress," Plaintiffs' Complaint at 3, and that, in fact, defendant's "negligent actions or inactions" caused such damage. *Id.* Plaintiffs' allegations do not get more specific.

In most jurisdictions, recovery for emotional distress is limited. However, recovery has been allowed for negligently caused mental distress when accompanied by a physical impact. *See Rowe v. Bennett*, 514 A.2d 802, 804 (Me.1986); *Chiuchiolo v. New England, etc. Tailors*, 84 N.H. 329, 150 A. 540 (1930) (court presented with challenge to impact rule). Furthermore, the courts have broadened the rule to allow recovery in the absence of physical impact, if plaintiff can prove physical injury, *Rowe, supra*, 514 A.2d at 804 (citations omitted), or "physical manifestations of his distress," *Thorpe v. State*, 133 N.H. 299, 303, 575 A.2d 351, 353 (1990) (citing *Chiuchiolo, supra*, 84 N.H. at 337–38, 150 A. at 544–45). *Accord, Santana v. Registrars of Voters of Worcester*, 398 Mass. 862, 867, 502 N.E.2d 132, 135 (1986) ("A person cannot recover for negligently caused emotional distress absent physical injuries.") (citation omitted). Additionally, the Supreme Judicial Court of Maine has allowed recovery for negligently inflicted emotional distress if there exists an underlying tort. *Rowe, supra*, 514 A.2d at 804; *Rubin v. Matthews Intern. Corp.*, 503 A.2d 694, 698 (Me.1986) (mental distress alone insufficient to make negligence actionable, without either "accompanying physical consequences, or an independent underlying tort").[5] In all three of the jurisdictions at

---

"We choose among substantive laws by applying a balancing test composed of five choice-influencing considerations: '(1) the predictability of results; (2) the maintenance of reasonable orderliness and good relationships among the States in the federal system; (3) simplification of the judicial task; (4) advancement of the governmental interest of the forum; and (5) the court's preference for what it regards as the sounder rule of law.'" *Keeton v. Hustler Magazine, Inc.*, 131 N.H. 6, 14, 549 A.2d 1187, 1192 (1988) [quoting *LaBounty v. American Ins. Co.*, 122 N.H. 738, 741, 451 A.2d 161, 163 (1982)].

*Morbark Indus., supra*, 733 F.Supp. at 487 n. 3.

5. While *not overruling it or holding it wrongly decided*, the Maine court has diverged some-

what from *Rubin* by allowing recovery absent even an underlying tort under very narrow facts and circumstances, none of which are relevant to the case at bar. *See Gammon v. Osteopathic Hosp. of Me., Inc.*, 534 A.2d 1282, 1285 (Me. 1987) (on appeal, trial court found to have committed error in directing verdict in favor of defendants when "a jury could conclude that hospital and mortician reasonably should have foreseen that members of ... family would be vulnerable to emotional shock at finding a severed leg in what was supposed to be the decedent's personal effects"); *Rowe, supra*, 514 A.2d at 806 (court held "that because of the nature of the psychotherapist-patient relationship, an action may be maintained by a patient for serious mental distress").

issue, when recovery is allowed, it is not permitted for mere upset, humiliation, hurt feelings, or bad manners. *See Thorpe, supra,* 133 N.H. at 303, 575 A.2d at 353 (citing *Corso v. Merrill,* 119 N.H. 647, 652–53, 406 A.2d 300, 304 (1979)); *Santana, supra,* 398 Mass. at 867, 502 N.E.2d at 135; *Rubin, supra,* 503 A.2d at 698.

In the case at bar, the complaint does not allege a physical impact or any physical consequences flowing from defendant's alleged negligent conduct, even when construed in a light most favorable to plaintiff. The only allegations of harm consist of humiliation, ridicule, unspecified emotional distress, and unspecified damage to business reputation. Plaintiff also does not make out a cause of action for any independent underlying tort. *See infra* at 51. Accordingly, Count I must be dismissed.

### C. Intentional Infliction of Emotional Distress

■ In Count II of the complaint, Fagan claims that defendant is also guilty of the intentional infliction of emotional distress. Here, too, the attempt is seriously flawed in that plaintiff fails to allege the essential elements of this tort. Plaintiff only alleges that defendant "knew or should have known that its intentional failure to fulfill the terms of the licensing agreement would cause the failure of" the Westbrook studio, that such failure would cause and, in fact, did cause Fagan an injury to his reputation in the business community and severe emotional and mental distress. Plaintiff's Complaint at 4. Again, that is the sum of plaintiffs' allegations.

All of the states at issue have now recognized the tort of intentional infliction of emotional distress, and, similarly, they all rely on the *Restatement (Second) of Torts* § 46 for guidance as to the essential elements of this tort. *See, e.g., Morancy v. Morancy,* —— N.H. ——, 593 A.2d 1158, 1159 (1991),[6] *and Jarvis v. Prudential Ins.*

*Co.,* 122 N.H. 648, 652, 448 A.2d 407, 409 (1982); *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me.1979); *Agis v. Howard Johnson Co.,* 371 Mass. 140, 144–45, 355 N.E.2d 315, 318–19 (1976).

■ In order to recover under this intentional tort, a plaintiff must establish that (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct, *Restatement (Second) of Torts* § 46, Comment i; (2) the conduct was so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community,' *Restatement (Second) of Torts* § 46, Comment d; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was 'severe' so that 'no reasonable man could be expected to endure it.' *Restatement (Second) of Torts* § 46, Comment j.

*Vicnire, supra,* 401 A.2d at 154. *See also Agis, supra,* 371 Mass. at 144–45, 355 N.E.2d at 318–19. *Accord, Morancy, supra,* 593 A.2d at 1159. As a threshold matter, plaintiff in the case at bar does not allege any conduct that could possibly be considered so extreme and outrageous as to exceed the bounds of decency or that could be construed as atrocious. Furthermore, there is no allegation of any emotional distress so severe that no reasonable man could be expected to endure it. Count II of the complaint, therefore, fails on its face and must also be dismissed. Remaining before the court then is only Count III, plaintiffs' breach of contract claim.

### D. Recovery in a Contract Action for Emotional Distress

■ As with the tort claims, all of the jurisdictions in question take a similar view of the final issue before the court: whether

---

6. While the New Hampshire Supreme Court has only recently explicitly recognized this tort in *Morancy,* it has implicitly done so since *Jarvis* in 1982, where it cited with approval § 46, *Restatement (Second) of Torts. See also Plante v. En-*

gel, 124 N.H. 213, 217, 469 A.2d 1299, 1302 (1983) (New Hampshire Supreme Court of the opinion that a claim for the intentional infliction of emotional distress should be treated as a separate tort).

or not recovery can be had for mental suffering or emotional distress in a contract action. The general rule is that such distress is not compensable.

Defendant contends that the general rule prevails, barring such recovery. Plaintiff concedes the general rule citing Massachusetts authority, yet attempts to argue his position relying on *Agis* and its progeny, all of which are based on tort theory. Having found that Fagan failed to state a claim in tort, *Agis* is inapposite. In Massachusetts, it has long been settled that " 'mental suffering resulting from breach of contract is not a subject of compensation.' " *McClean v. University Club*, 327 Mass. 68, 76, 97 N.E.2d 174, 180 (1951). *See also Sackett v. St. Mary's Church Soc.*, 18 Mass.App. 186, 464 N.E.2d 956 (1984) (appeals court, in affirming lower court's grant of summary judgment to defendants on contract count, refused to expand reach of general rule prohibiting damages for mental distress).

Similarly, the Supreme Judicial Court of Maine has declined to adopt any broad exception to the general rule and has not been persuaded to abandon the rule that precludes damages for emotional or mental distress for breach of contract. *Rubin, supra*, 503 A.2d at 698.[7]

In New Hampshire, "[r]ecovery of damages for mental suffering and emotional distress that may accompany [ ] economic damage is not ... permitted in contract actions[.]" *Jarvis, supra*, 122 N.H. at 654, 448 A.2d at 410 (citing *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 615, 392 A.2d 576, 581 (1978)). In *Lawton*, the New Hampshire court, resting on the general rule, concluded that since plaintiff's case did "not state a cause of action in tort," the "request for damages for mental suffering and emotional distress" had to be dismissed. *Lawton, supra*, 118 N.H. at 615, 392 A.2d at 581–82. *Accord, Lash v. Cheshire County Savings Bank*, 124 N.H. 435, 474 A.2d 980 (1984) (relying on general rule reiterated in *Lawton*, court vacated jury verdict which had awarded $15,000 for emotional distress as result of contractual dispute).

Based on controlling principles of law from the implicated jurisdictions, this court therefore concludes that recovery for mental suffering or emotional distress cannot be had on plaintiff's contract claim.

### III. Conclusion

For the reasons set forth herein, defendant's motion to dismiss Counts I and II (document no. 26) is granted. To the extent that Count III, the contract claim, seeks recovery for emotional distress, it too is dismissed. Count III is otherwise still before the court.

SO ORDERED.

---

7. In both Massachusetts and Maine, the courts have recognized very narrow exceptions to the general rule.

   The judicial reluctance to award damages for emotional distress in contract actions is reflected in *Restatement (Second) of Contracts* § 353:

   Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.

   Common examples of the second exceptional situation are contracts 1) between carriers and innkeepers and their passengers and guests; 2) for the carriage or proper disposition of dead bodies; and 3) for the delivery of messages concerning death.

   *Rubin, supra*, 503 A.2d at 696 (citations omitted). *Accord Sackett, supra*, 18 Mass.App. at 188, 464 N.E.2d at 958. Plaintiff in the case at bar makes no allegations which could possibly be construed so as to fall within the scope of these narrow exceptions.